# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| PAMELA ADAMS, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 3:23-cv-316-RAH |
| | ) [WO] |
| MAX CREDIT UNION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' *Motion to Remand for Lack of Subject Matter Jurisdiction*. (Doc. 8.) The motion has been fully briefed and is ripe for review. After careful consideration, the motion is due to be GRANTED.

## BACKGROUND

Plaintiffs Pamela Adams and Donovan Sistrunk filed this class action suit in the Circuit Court of Macon County, Alabama seeking damages and injunctive relief associated with Defendant MAX Credit Union's (MAX) overdraft practices as dictated by the Plaintiffs' account agreements with MAX. According to the Plaintiffs, MAX, an Alabama-chartered credit union, failed to properly disclose its overdraft service fees by failing to completely, accurately, clearly, and understandably disclose the fees, or to segregate that information from other information as required by Regulation E, 12 C.F.R. § 1005.1, *et seq.*, of the

1

Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693, *et seq.*, a federal consumer protection law. (Doc. 1-3 at 4-5.) Though they could have, Plaintiffs do not bring an affirmative claim for a violation of Regulation E of the EFTA or any other federal law, but instead bring state law claims for breach of contract, breach of the duty of good faith, unjust enrichment, and conversion, alleging that their account agreements expressly incorporate federal law into the contract terms. Plaintiffs also claim that MAX, without express contractual authorization, improperly seized and siphoned off account deposits received from the Social Security Administration to pay overdraft fees. (Doc. 1-3 at 7.)

MAX timely removed the case to this Court, based on federal question jurisdiction, citing to Regulation E of the EFTA and the anti-assignment provision of the Social Security Act, 42 U.S.C. § 407(a).

On May 24, 2023, the Plaintiffs moved to remand this action back to state court for lack of subject matter jurisdiction. According to the Plaintiffs, the Class Action Complaint advances only state law claims, and the allegations do not fit within the narrow category of cases where state law claims can be deemed to arise under federal law. (Doc. 8 at 3.)

## LEGAL STANDARD

On a motion to remand, a court must consider whether removal to federal court was appropriate. Removal is proper if the case could have been filed in federal

court in the first instance. 28 U.S.C. §1441(a). The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

Federal district courts have original jurisdiction "over two general types of cases: cases that arise under federal law . . . and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties." *Home Depot U.S.A., Inc. v. Jackson*, 139 S.Ct. 1743, 1746 (2019) (citing to 28 U.S.C. §§ 1331, 1332(a)). The former is known as "federal-question jurisdiction" and the latter as "diversity jurisdiction." Any civil action of these types that is brought in state court "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Assuming the Court has subject matter jurisdiction, the case may proceed in federal court.

To determine whether a district court has subject matter jurisdiction, courts abide by the "well-pleaded complaint rule," which requires that the basis for federal jurisdiction, whether federal question or diversity, be "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A federal question exists "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question

3

of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983). The latter test is met where a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Dunlap v. G & L Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004); *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

This inquiry looks not to the significance of the issue to the parties, but rather "to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The Supreme Court has found substantial questions in three primary instances where: (1) the federal government had a "direct interest in the availability of a federal forum to vindicate its own administrative action," *Grable*, 545 U.S. at 315; (2) "the constitutional validity of an act of Congress . . . is directly drawn in question," *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921); or (3) the question presented is a "nearly pure issue of law . . . that could be settled once and for all" and govern future cases, *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (internal quotation marks omitted). Where the resolution of a federal question does not implicate greater federal interests or is "fact-bound and situation-specific," the Supreme Court has been less willing to find federal jurisdiction. *See Gunn*, 568 U.S. at 263 (internal quotation marks omitted).

For claims that have either federal question or diversity jurisdiction, federal courts may exercise supplemental jurisdiction over state law claims so long as they form part of the same case or controversy as the federal claims, 28 U.S.C. § 1367, in that they "derive from a common nucleus of operative fact," *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

## DISCUSSION

District courts must have subject matter jurisdiction, either federal question or diversity, over claims removed to federal court. Affirmative claims for relief for violations of Regulation E of the EFTA clearly arise under federal law, as do claims under the Social Security Act. These claims therefore give rise to federal question jurisdiction under 28 U.S.C. § 1331.

Jurisdiction is less certain where, as here, Plaintiffs allege violations of federal law in the context of an affirmative claim brought under state law. To create federal question jurisdiction in such a circumstance, the complaint must establish that "federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice*, 547 U.S. at 690. Federal question jurisdiction does not arise from the "mere presence of a federal issue in a state cause of action." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). And the Supreme Court has not "treated 'federal issue' as a password opening federal courts to any state action

embracing a point of federal law." *Grable,* 545 U.S. at 314.

The Supreme Court in *Grable* explained that in certain circumstances "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.  According to the Supreme Court, rather than stating a "single, precise, all-embracing test" to determine whether a substantial federal question exists, "the question is, does the state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* (internal quotation marks omitted).  The Court concludes that, while a close call, the Class Action Complaint filed by the Plaintiffs in this case does not.

First, the Plaintiffs do not argue that their claims do not necessarily raise an actually disputed federal issue, at least as it concerns Regulation E.  They focus their argument on whether the federal issue is substantial.  They claim that it is not.

Federal jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313.  Federal issues are substantial only if they have significance beyond the confines of the litigation

between the parties. *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013). Substantiality looks to the importance of the issue to the federal system as a whole. *Id*.

As *MDS* observed, there are three key factors to consider in determining substantiality: (a) whether there is a pure question of law, (b) whether the question will control many other cases, and (c) whether the government has a strong interest in litigating in a federal forum. *Id*. (citing *Empire Healthchoice* 547 U.S. at 700–01). In *Grable,* the "meaning of the federal statute [was] actually in dispute [and] appear[ed] to be the only legal or factual issue contested in the case." *Grable*, 545 U.S. at 315. The Supreme Court has subsequently confirmed that a crucial factor supporting the result in *Grable* was the presence of a "nearly pure issue of law." *Empire Healthchoice*, 547 U.S. at 700 (internal quotation marks omitted). A fact-bound and situation-specific issue renders federal jurisdiction inappropriate. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1299 (11th Cir. 2008).

The issues here are not pure questions of law. Resolution of the Plaintiffs' claims, as currently pleaded in the Class Action Complaint, ultimately will require an evaluation of highly disputed factual issues—Did MAX's account agreements incorporate[1] federal law into their terms, including Regulation E's overdraft

---

[1] The Court will assume that the account agreements expressly incorporate federal law into their contract terms. However, the Court was unable to locate this language in the referenced account agreements to the extent it could read the agreements.

7

disclosure mandates, and if so, did MAX's overdraft disclosures comply with Regulation E? The parties seem to recognize that, standing alone, the disclosures contained in the account agreements themselves would violate Regulation E, but that if MAX did issue the separate opt-in disclosures as it says it did, then the disclosures are sufficient for Regulation E purposes. To be sure, the jury will have to consider Regulation E in its decision, but the jury's primary considerations are the terms of the account agreements and whether MAX provided the stand-alone opt-in disclosures to its customers. These are fact-driven issues, not purely legal ones. As the Supreme Court explained in *Grable,* federal courts have rejected the "expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313. And importantly, neither party takes the position that the meaning of Regulation E is unclear, vague, or really in dispute.

"The substantiality inquiry under *Grable* also looks to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. And here, the federal issues at hand concerning Regulation E involve private parties and do not bear upon the federal system as a whole. This case does not involve, for example, the constitutionality of an act of Congress, or a disputed interpretation of federal law. From this Court's observation, the case turns largely on whether MAX provided the stand-alone opt-in disclosures to the Plaintiffs. This is a fact dispute between the parties, and a hotly disputed one at that. As fact driven issues, a state court's decision

on the merits of the Plaintiffs' contract claims will not be binding on federal courts, even if the contract claims require consideration of Regulation E.

While the existence of Regulation E certainly is important to this particular case, "something more, demonstrating that the question is significant to the federal system as a whole, is needed." *Id.* at 264.  The federal issue here does not implicate in a significant way the concerns that supported the exercise of federal jurisdiction over the state law claim in *Grable*.  In other words, "[t]he pertinent finding, . . . is that the federal interest in this case is not 'substantial' as that term has been defined under the prevailing Supreme Court precedent." *Adventure Outdoors*, 552 F.3d at 1301–02 (quoting *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007)).  The federal question at issue, as it concerns Regulation E here, is not a matter of considerable magnitude nor a substantial federal interest.  Accordingly, the Court concludes that MAX has not shown that state law claims relating to its overdraft disclosures necessarily raise a stated federal issue under Regulation E, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

But that is not the end, as MAX also cites to a provision (the anti-alienation provision) in the Social Security Act, 42 U.S.C. § 407(a).  MAX's reliance upon the Social Security Act is even less compelling.  In their Class Action Complaint, the

Plaintiffs claim that their MAX account agreements do not give MAX the express authority to deduct overdraft fees from their account balances when the account balances come from social security income deposits. While MAX claims that a federal question exists here because Plaintiffs' claims necessarily implicate the anti-alienation provision of the Social Security Act, nowhere in the Class Action Complaint do the Plaintiffs cite or reference the Social Security Act, nor do the Plaintiffs even infer that the social security income prohibition flows from any prohibition founded in federal law. Instead, Plaintiffs simply allege that since the account agreements do not expressly permit it (as do the agreements of many other financial institutions), MAX could not do it either. That claim is strictly rooted in contract terms. As such, the Court concludes that MAX has not shown that the state law claims relating to the overdraft deductions from the Plaintiffs' account balances necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.[2]

## CONCLUSION

For the reasons stated herein, it is

---

[2] The Court emphasizes that the outcome here is largely premised on how the Class Action Complaint is currently drafted and with particular emphasis of the terms of the parties' account agreements. The Plaintiffs should note that digression from the very narrow path they have plead as to their claims could very well alter the complaint enough to tip the scales of this case into one sufficiently giving rise to federal question jurisdiction.

ORDERED as follows:

1. Plaintiffs' *Motion to Remand for Lack of Subject Matter Jurisdiction* (Doc. 8) is **GRANTED**.

2. The *Unopposed Motion to Stay Proceedings* (Doc. 7) before this Court is **DENIED** as moot.

3. This case, including all pending motions, are **REMANDED** to the Circuit Court of Macon County, Alabama.

The Clerk of Court is DIRECTED to close this case.

DONE, on this the 3rd day of October 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE